LUTTIG, Circuit Judge,
concurring in part and dissenting in part:
The majority concludes that the Board failed to properly apply its precedents re *302 garding whether -a company’s- employees at a “new facility” must be regarded as a separate bargaining unit, and, “for this reason alone,” it denies enforcement to the Board’s -finding that Earthgrains committed an unfair labor practice by refusing to recognize the union at the consolidated facilities in Meridian, Laurel, and Hatties-burg. See ante at 298. I believe that this conclusion is based on a misreading of the Board’s previous decisions and a misunderstanding of this court’s authority- to review decisions of the Board. Futhermore, I cannot agree with the majority’s holding that the Board “could not” have concluded that the former CooperSmith employees at these three consolidated facilities satisfied the Board’s standard announced in Safeway Stores, 256 N.L.R.B. 918 (1981), for accretion into union-represented bargaining units. The majority’s analysis blurs together and confuses two distinct issues presented in this case: first, whether the former Earthgrains employees in the consolidated units must be treated as separate bargaining units, apart from the unionized multifacility bargaining units that had been established pre-consolidation, and second, whether the former CooperSmith employees in those consolidated facilities may be accreted to those bargaining units. For these reasons, I dissent from Part II of the majority’s opinion, and would enforce the portion of the Board’s order requiring Earthgrains to recognize the union at all four of the consolidated facilities.
I.
The majority does not accurately describe the bargaining units and labor situation at Earthgrains. Before its acquisition of CooperSmith, Earthgrains was a party to four different collective bargaining agreeménts with the Bakery, Confection-ary, and Tobacco Workers International Union, Local 149 (“the Union”), each covering a separate “bargaining unit” of Ear-thgrains employees. One of these collective bargaining agreements covered all production employees at Earth-grains’ bakery in Meridian, Mississippi. The other three agreements covered delivery and sales ' employees, who worked among Earth-grains’ nineteen different distribution facilities throughout the state. These three agreements were known as the “Meridian agreement,” the “Gulfport agreement,” and “Jackson agreement.”[1]
After the acquisition of CooperSmith, a non-union competitor,[2] Earthgrains consolidated operations in each city that had both an Earthgrains and CooperSmith distribution facility. One facility would be closed, and the remaining facility was viewed as either an “Earth-grains” or a “CooperSmith” operation, depending on which company had been dominant pre-consolidation in the relevant geographic area. Four of the consolidated facilities, located in Meridian, Laurel, Hattiesburg, and Columbus, were deemed continuing CooperSmith operations, because Coo- *303 perSmith had the dominant market share in those localities.[3] In Meridian, Laurel, and Hattiesburg, the former Earth-grains facility was physically closed and the Coo-perSmith facility was used. In Columbus, the old Earthgrains facility was used and the CooperSmith facility closed. These consolidated facilities employed both former CooperSmith (non-union) employees and former Earth-grains (union) employees.[4]
Earthgrains did not recognize the union of the former Earthgrains employees at the consolidated facilities in M.eridian, Laurel, Hattiesburg, and Columbus, even though these employees, while they worked in the former Earthgrains facility, had been covered by either the Meridian or Gulfport collective bargaining agreement.[5] The National Labor Relations Board found this to be an unfair labor practice, ruling that all of the employees at the consolidated facilities in Meridian and Columbus were included in the Meridian collective bargaining agreement, and that the Laurel and Hattiesburg employees were covered by the Gulfport agreement. J.A. 478; 485.
II.
The Board rejected Earthgrains’ argument that the workers at the consolidated facilities in Meridian, Laurel, and Hatties-burg should be regarded as separate bargaining units, outside the scope of the Meridian and Gulfport collective bargaining agreements, holding that Earth-grains bore the burden of proving that the consolidation with CooperSmith altered the existing bargaining units to the point that they were no longer appropriate, and that Earthgrains failed to show that the consolidation had affected the appropriateness of the existing bargaining units.[6] J.A. 478; 485. Nowhere does the majority claim that the Board’s refusal to regard the consolidated facilities at Meridian, Laurel, and Hattiesburg as separate bargaining units is contrary to, or an unreasonable interpretation of, the National Labor Relations Act. Rather, the only apparent basis for the majority’s decision to deny enforcement to this portion of the Board’s order is that the Board violated the Administrative Procedure Act by failing “to apply in fact the clearly understood legal standards that it enunciates in principle.” Allentown Mack v. NLRB, 522 U.S. 359, 376, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998). The majority characterizes the Board’s decisions in ATS Acquisition, 321 N.L.R.B. 712, 1996 WL 395871 (1996), and Gitano *304 Group, Inc., 308 N.L.R.B. 1172, 1992 WL 281657 (1992), as establishing a “presumption” that “employees at [a] new facility” are treated as a separate bargaining unit.
Those cases hold no such thing, and the Board has not violated principles of reasoned decisionmaking by arbitrarily declining to apply its previously-announced standards. In Gitano, the Board held that when an employer “transfers a portion of its employees at one location to a new location,” the unit at the new facility is presumptively a separate unit. Id. at 1175 (emphasis added). If that presumption is not rebutted, a majority test determines whether the employer must recognize the union at the new facility. See id. at 1175 (“If a majority of the employees in the unit at the new facility are transferees from the original bargaining unit, we will presume that those employees continue to support the union and find that the employer is obligated to recognize and bargain with the union ...”). The majority appears to believe (although it does not explain why) that the Gitano presumption should apply because the union employees in Meridian, Laurel, and Hattiesburg were physically relocated to the established CooperSmith facilities. When Earthgrains consolidated operations in Meridian, Laurel, and Hat-tiesburg, however, it did not “transfer a portion of its employees at one location to a new location,” rather, it relocated and consolidated an entire facility, transferring all (not a portion) of its remaining employees at that old facility to the new location. Although the transferred employees were a “portion” of their overall bargaining unit (the Gulfport bargaining unit for the Laurel and Hattiesburg employees, and the Meridian bargaining unit for the workers in Meridian), they, did not constitute a “portion” of Earthgrains’ employees at their original locations in Meridian, Laurel, or Hattiesburg, as required for the Gitano presumption to apply.
In Gitano, as well as in the Board cases relied upon by Earthgrains in which the Board applied the Gitano presumption, a portion of unionized employees remained at the original facility while another portion were transferred to a new location. See U.S. Tsubaki, 331 NLRB No. 47, 2000 WL 791211 (2000); ATS Acquisition Corp., Inc., 321 NLRB 712, 1996 WL 395871 (1996); Ryder Truck Rental, Inc., 318 NLRB 1092, 1995 WL 547774 (1995); Armco Steel Co., 312 NLRB 257, 1993 WL 373926 (1993). The Board has never applied the Gitano presumption when an entire facility is relocated or consolidated, and the language of Gitano does not require such a result. Accordingly, it was permissible for the Board to hold that the employees at the consolidated facilities who were transferred from former Earthgrains facilities remained part of the established bargaining units and retained their rights to union representation.
Oddly enough, the majority’s opinion, while faulting the Board for failing to presume that all -the employees at the consolidated facilities, whether former Earthgrains or former CooperSmith employees, are separate from the existing Earthgrains bargaining units, only denies union representation to the former Coo-perSmith employees at those facilities. See ante at 299 (“[W]e conclude that the Board, in accreting the CooperSmith employees at the Meridian, Laurel, and Hat-tiesburg facilities into two Earthgrains bargaining units, failed to follow its own standards for doing so. Therefore, we decline to enforce the Board’s order directing Earthgrains to recognize that those employees are represented by the Union.” (emphasis added)). The majority opinion apparently leaves intact the Board’s order requiring Earthgrains to recognize the union as the representative of the former Earthgrains employees at *305 the three consolidated units. No election has been held among these employees, however, so the only basis for continued union representation is if these employees are somehow still part of the existing, multi-facility, union-represented Ear-thgrains bargaining units. But such would be inconsistent with the majority’s insistence that the Board should have applied Gitano’s presumption of separate bargaining units. Perhaps the majority assumes that the union successfully re-, butted the Gitano presumption with respect to these former Earthgrains employees at the consolidated facilities, but there certainly is no discussion of this. And it would be most inappropriate for the majority to make such a tacit assumption without citing to any evidence in the record and without giving Ear-thgrains an opportunity to show, on remand to the Board, that the Gitano presumption has not been rebutted. So it appears that the outcome reached by the majority, which allows the former Ear-thgrains employees in the consolidated facilities to retain their union representation, is irreconcilable with its discussion of Gitano (but consistent with my view about the scope of Gitano, which, for the reasons I discussed above, does not apply to this case). I have -no quarrel with the majority’s ultimate conclusion that the union still represents the employees who were transferred from the former Ear-thgrains facilities in Meridian, Laurel, and Hattiesburg, but I cannot understand its rationale.
III.
As to the former CoopérSmith employees now working in the consolidated facilities, the issue is whether they can properly be accreted to the bargaining units consisting of unionized Earthgrains employees. Board precedent permits employees to be accreted to a preexisting bargaining unit when the employees have “little or no separate group identity and thus cannot be considered to be a separate appropriate unit” and the community of interest between the employees and the existing unit is. “overwhelming.-” Safeway Stores, 256 NLRB at 918. See also Staten Island University Hospital v. National Labor Relations Board, 24 F.3d 450, 455 (2d Cir.1994) (“Accretion, requires an overwhelming community of interests between a smaller group of employees and a larger unit ... [and] applies only if one group of employees has no identity distinct from the other.”).
In making its finding of accretion, the Board stated, in conclusory fashion, that the consolidated CooperSmith employees “share a community of interests” with the unionized Earthgrains employees. J.A. 478. As the majority notes, the Board did not address whether this community of interests was “overwhelming,” nor did it discuss the “little or no separate group identity” requirement' of the Safeway Stores test. Although I agree with the majority that the Board should have more carefully applied its announced accretion standards to the facts of this case, rather than glossing over the accretion issue as it did,[7] I do not think it appropriate to deny *306 enforcement of this, part of order because the record in this case contains substantial evidence, that would have allowed the Board'to find, that the accreted CooperS-mith employees have “little or no separate group identity” from, as well as an “overwhelming community of interest” with, the unionized Earth-grains employees.
The majority gives four reasons to support its conclusion that the Board’s accretion order fails the Safeway Stores test. None is persuasive and only one is even relevant. The majority is mistaken to rely on the pre-consolidation attributes of the former CooperSmith employees, such as their distinct geographical employment locations and unique working conditions. These have no bearing on whether the proper subjects of the accretion inquiry— whether, post-consolidation, these employees have “little or no separate group identity” from, as well as an “overwhelming community of interest” with, the unionized Earthgrains employees. The majority’s desire to ignore the post-consolidation characteristics of the former CooperSmith employees is understandable, because none of them could possibly support its refusal to enforce the Board’s accretion order. The record reveals that the former Coo-perSmith employees are in no way cordoned off from the unionized Earthgrains employees; quite the contrary, they are working side by side, in the same facilities, performing the same tasks in delivering baked goods.
The majority also makes much of the fact that former CooperSmith employees outnumber the unionized Earthgrains employees at the three consolidated facilities in dispute, and claims that “[tjhese data alone suggest that the .former CooperS-mith employees might successfully assert their historically separate interests through a vote, if given the chance.” Ante at 299. The Board’s order, however, ac-cretes the former CooperSmith employees to bargaining units that encompass multiple Earthgrains facilities, and the former CooperSmith employees do not constitute such a sizable portion of the Meridian or Gulfport bargaining units as to cast doubt on the union’s majority status among the accreted units. Moreover, the high ratio of former CooperSmith employees to unionized Earthgrains employees does not, without further analysis, have any direct relevance to the two prongs of the Safeway Stores test. Large numbers of nonunion employees may nevertheless have “little or no separate group identity” from, as well as an “overwhelming community of interest” with, a small number of unionized employees.
The majority does point to one relevant factor that bears on whether the “overwhelming community of interest” prong has been satisfied, and" that is the lack of prior union representation among the accreted CooperSmith employees. See National Labor Relations Board v. Lundy Packing, 68 F.3d 1577, 1580 (4th Cir.1995) (listing the “history of collective bargaining,” “desires of the affected employees” and “extent of union organization” among the twelve factors the Board has traditionally applied when applying the “community of interest” test). However, many other factors traditionally considered by the Board in making “community of interest” determinations cut in the opposite direction and support the Board’s finding of accretion, especially such factors as the “similarity in the kind of work performed,” “similarity in the qualifications, skills, and training of the employees,” “geographic *307 proximity,” and “continuity -or integration of production processes.” Id. Given the facts of this case, the majority’s ruling that the Board’s standard for accretion could not possibly be satisfied, without even remanding to give the Board an opportunity to apply the Safeway Stores standard in the first instance, is indefensible.
In sum, it is clear from the record that the employees in the consolidated facilities, whether originally from CooperSmith or Earthgrains, are working .as part of a unified operation, and that the Board’s accretion order was proper, notwithstanding its failure to apply the'Safeway Stores standard. Although I conclude that remanding to the Board to apply the Safeway Stores standard, given the .facts- of this case, would be a needless formality, the majority should at least, if it disagrees, remand with instructions to the Board to allow it an opportunity to apply.the proper legal standard. •
IV.
I concur with the majority that the Board’s finding of constructive discharge regarding Thomas Neal is not supported by substantial evidence, although, like the majority, I am satisfied that substantial evidence supports the Board’s finding that Earthgrains violated section 8(a)(1) and (3) of the National Labor Relations Act by refusing to promote Neal to route sales representative and by telling him that his filing of a grievance kept him from getting that promotion.
Earthgrains argues that the Board’s “Hobson’s Choice” theory of constructive discharge is an “arbitrary and irrational” interpretation of the NLRA. I think it important to emphasize, however, that we need not reach the issue of whether the Board’s use of the “Hobson’s Choice” theory of constructive discharge is permissible under the National Labor Relations Act, because the record lacks substantial evidence to support a finding that Earthgrains constructively discharged Neal, even if we assume, arguendo, that the Board’s articulated “Hobson’s choice” standard is a permissible interpretation of the statute.
Willis’ suggestion to Neal that he would have received a promotion had he not filed a grievance through the union did not condition Neal’s continued employment as a depot loader on the relinquishment of statutory rights. Rather, Willis’ statement, at most, conditioned Neal’s advancement within the company on his abandonment of protected activity. An employer’s mere conditioning of some benefit or condition of employment on the relinquishment of statutory rights is not enough, under the Hobson’s choice theory, to create a “constructive discharge” if the employee later resigns. If it were, every violation of section 8(a)(3), which prohibits “discrimination in regard to ... any term or condition of employment to encourage or discourage membership in any labor organization” would present a “Hobson’s choice” to employees that would allow them to quit and later claim reinstatement and backpay. The Board has never held that the doctrine of “constructive discharge” is this broad and did not so hold in this case.[8]
*308 With these observations, I concur in Parts I and III and dissent from Part II of the majority’s opinion. • •

. All of CooperSmith’s employees, at the time of acquisition, were non-union. J.A. 714.

. The other three consolidated facilities (in Jackson, Philadelphia, and Forest) were viewed as continuing Earthgrains operations, because Earthgrains had been dominant in those geographic regions. Earthgrains continued to apply the existing collective bargaining agreements to the workers in those facilities, including the former CooperSmith employees who transferred in.

. Of the Meridian facility’s thirteen consolidated sales and delivery employees, eleven were former CooperSmith employees and two were from Earthgrains. In Laurel, eight came from CooperSmith and one from Ear-thgrains. In Hattiesburg, ten previously worked for CooperSmith and five for Ear-thgrains. In Columbus, three were from Coo-perSmith and four from Earthgrains.

. Earthgrains' workers in the Meridian and Columbus facilities had been covered by the Meridian agreement; Earthgrains' workers in the Laurel and Hattiesburg facilities had been covered by the Gulfport agreement.

. The Board specifically relied on the findings in the record that Earth-grains "continues to produce and distribute bakery products without substantial changes in operations; employees from the historically represented units comprise a majority in each overall expanded unit; no other labor organizations represented the CooperSmith employees; and those employees share a community of interests with the previously represented employees in the consolidated operations.” J.A. 478.

. This is especially true in light of our court's observation that "courts have been particularly vigilant in assuring that the Board observes in practice the strict standards it has adopted for accretion orders.” Baltimore Sun Co. v. NLRB, 257 F.3d 419, 430 (4th Cir.2001) (refusing to enforce an accretion order by the Board when it failed to consider the "little or no separate group identity” prong of the Safeway Stores standard). See also Universal Security Instruments, Inc. v. National Labor Relations Board, 649 F.2d 247, 253 (4th Cir.1981) (“In making its [accretion] determination the Board must closely analyze whether the new and old employees truly share a community of interest.’ ") (emphasis added). *306 Because accretion forecloses the .accreted employees' basic right to select their bargaining representative, the Board should not lightly impose a union on employees who have never indicated a preference for such representation. .

. We need not decide, in this case, whether the NLRA would permit the Board to explicitly adopt, in its caselaw, a policy that treats any employee resignation in response to a section 8(a)(3) unfair labor practice as a constructive discharge that would entitle the employee to reinstatement and backpay. It should be noted, however, that the Board's remedial powers are confined to make-whole remedies, not punitive sanctions, see NLRB v. Pepsi Cola Bottling Co. of Fayetteville, Inc., 258 F.3d 305, 314 (4th Cir.2001), and that backpay awards are contingent upon reasonable efforts by the victims of unfair labor *308 practices to mitigate their damages, see Coronet Foods, Inc. v. National Labor Relations Board, 158 F.3d 782, 800 (4th Cir.1998). Any ' theory of constructive discharge adopted by the Board must" comport with these principles.